UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORP. | CIVIL ACTION |
| VERSUS | NO. 20-1259 |
| ERNST & YOUNG LLP | SECTION "L" (1) |

## ORDER & REASONS

Pending before the Court is the government's Motion to Intervene and Stay. R. Doc. 21. The motion is unopposed by Defendant Ernst & Young, LLP. R. Doc. 29. In fact, Ernst & Young, LLP supports the government's motion. Plaintiff Federal Deposit Insurance Corporation opposes the motion to the extent it seeks a complete stay of the proceedings but does not oppose the motion to intervene. R. Doc. 30. The government has filed a reply. R. Doc. 44. Oral argument was held on Wednesday, July 8, 2020 by telephone. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

### I.   BACKGROUND

This case arises out of financial statement audits of First NBC Bank and First NBC Bank Holding Company, Inc. ("First NBC" or "Bank"), by Ernst & Young LLP in 2014 and 2015. R. Doc. 1 ¶ 1. Plaintiff, the Federal Deposit Insurance Corporation as Receiver for First NBC Bank ("FDIC-R")[1], filed the instant suit to recover damages from Defendants Ernst & Young LLP ("EY") and Gloucester Insurance Ltd. ("Gloucester")[2], alleging that the audits of First NBC were

---

[1] The State of Louisiana closed First NBC Bank on April 28, 2017, and appointed the FDIC as Receiver. R. Doc. 1 at 4.
[2] Gloucester allegedly provided EY with professional liability insurance during the relevant period. R. Doc. 1 ¶ 11.

1

negligently performed. *Id.* ¶ 2. Specifically, FDIC-R alleges that EY failed to design audit procedures to discover material fraud and accordingly failed to discover fraud perpetrated by First NBC's President and Chief Executive Officer, Ashton Ryan. *Id.* 1 ¶ 2. Additionally, FDIC-R contends EY identified false statements made by Ryan but failed to investigate the falsehoods or report them to the Audit Committee. *Id.* ¶ 3. FDIC-R further alleges that EY negligently issued an unqualified opinion regarding First NBC's financial statements and internal controls processes. *Id.* FDIC-R characterizes these actions as a breach of EY's professional duties. *Id.*

FDIC-R alleges First NBC suffered at least $125 million in losses as a result of Ryan's fraudulent conduct. *Id.* In recounting Ryan's allegedly fraudulent practices, FDIC-R explains that Ryan held formal roles as the Bank's founder and CEO in addition to overseeing the lending department and having unilateral authority to approve tax credit investments. *Id.* ¶ 16–19. FDIC-R argues Ryan, acting in his own interest, "committed fraud at First NBC by repeatedly causing the Bank to advance money through loans and tax credit investments on false pretenses." *Id.* ¶ 20. He further allegedly "advance[d] hundreds of millions of dollars to promote his own financial interests and mask the deteriorating financial condition of his lending and tax credit investment portfolios." *Id.* ¶ 4. Additionally, FDIC-R contends Ryan made numerous "false statements in loan approval memoranda regarding the condition of collateral, alleged payments by borrowers, and the existence financial condition of guarantors," which were identified in EY's work papers but not acted upon. *Id.* ¶ 20. The Complaint also identifies several other alleged actors in the scheme, including Jeffrey Dunlap, Kenneth Charity, and Gregory St. Angelo. *Id.* ¶ 21–23. FDIC-R contends these fraudulent practices, and accordingly the $125 million loss associated with them, could have been discovered and prevented had EY conducted its audits in accordance with its professional responsibilities.

FDIC-R explains that EY was engaged to conduct integrated audits in 2014 and 2015 as required by the Sarbanes-Oxley Act. *Id.* ¶ 28–29. An integrated audit requires an auditor to evaluate a company's financial statements and internal controls over financial reporting. *Id.* ¶ 28. During the audits, EY was allegedly given "direct and unfettered" access to the Bank's internal systems and records *Id.* ¶ 30. EY's audit for the 2014 fiscal year represented that the Bank's consolidated financial statements "were fairly stated in accordance with GAAP and free from material misstatement whether due to error or fraud." *Id.* ¶ 32. The audit also included an unqualified opinion that the Bank's internal controls over financial reporting were effective. *Id.* ¶ 32. As to the 2015 fiscal year, EY issued an unqualified opinion regarding the Bank's consolidated financial statements but identified several material weaknesses in internal controls and issued an adverse opinion accordingly. *Id.* ¶ 33.

FDIC-R identifies a number of alleged failures on EY's part that caused the fraud to remain undiscovered. In particular, FDIC-R alleges that EY failed to exercise professional skepticism while conducting the audits and failed to identify material weaknesses in internal controls despite knowing that Ryan exercised a dominant influence over the Bank's lending and financial statement process, including personally handling a large portfolio of loans and tax credit investments and recklessly advancing tens of millions of dollars to borrowers without meaningful controls." *Id.* ¶ 5. Additionally, FDIC-R argues EY ignored fraud risks, failed to design audit procedures that would adequately address those risks, and failed to obtain sufficient information to support its audit opinions, erroneously relying instead on management's representations. *Id.* ¶ 6. FDIC-R contends these failures constitute breaches of EY's professional duties to conduct the audits in accordance with Public Company Accounting Oversight Board rules, auditing standards, quality

control standards, GAAP and Generally Accepted Auditing Standards, and other professional auditing standards. *Id.* ¶ 39.

Based on the foregoing, FDIC-R seeks damages for professional negligence from EY. FDIC-R also brings a direct action against Gloucester, an insurance entity that provided $400 million in professional liability insurance coverage to EY during the relevant period.

At the time of writing, neither Defendant has answered the complaint. EY's answer is due on July 13, 2020, and Gloucester's answer on July 22, 2020.

## II.   PENDING MOTION

### A.  Government's Motion to Intervene and Stay [R. Doc. 21]

The United States of America has filed a motion to intervene under Federal Rule of Civil Procedure 24 and stay this matter until criminal proceedings against a number of related parties have concluded. R. Doc. 21-1 at 1. The government explains that criminal investigations involving First NBC are ongoing and that charges have been brought against Jeffrey Dunlap, Gregory St. Angelo, and Kenneth Charity, various actors involved in the allegedly fraudulent scheme. *Id.* at 1. These individuals have been charged with conspiring with Bank President A and other employees to commit fraud by misrepresenting their financial status, concealing the accurate performance of loans issued to them or their associates, misrepresenting the purpose of loans issued to them or their associates, providing false personal financial statements, unjustly enriching certain officers and employees, concealing information, and creating false tax credit investments. *Id.* at 2.

The government explains that the criminal cases against these individuals "covers the same time-period, operative facts, and allegation" as the complaint in this instant matter, and that "[t]he FDIC's case will necessarily involve testimony from the same witnesses the government will use

in its investigation."[3]  *Id*. at 3. Further, the government notes that the criminal investigation is active and ongoing, and that any prejudice suffered by FDIC-R would be negligible because the civil case is "in its infancy." *Id*. at 12, 13. Additionally, the government argues that a stay is required to protect its interest in the resolution of the criminal matter because both the criminal and civil matters will involve extensive discovery from the same "critical witnesses." *Id*. at 14. Lastly, the government contends the public has a substantial interest in prioritizing the resolution of the criminal matter without "inhibiting the Government's ability to preserve the usefulness of its anticipated trial witnesses." *Id*. at 14. Specifically, the government fears that the civil discovery process, which allows non-party witnesses to be questioned broadly about any relevant matter, risks "upsetting the truth-seeking process" by "educating those witnesses about matters outside of the scope of their personal knowledge." *Id*. at 15, 16. Further, the government suggests that even purely legal questions adjudicated in the civil matter could implicate factual questions with significant bearing on the criminal case. *Id*. at 15.

For these reasons, the government seeks to intervene in the matter and stay the case in order to "manage the scope and manner of discovery in the criminal case and to protect the integrity and truth-seeking function of the criminal proceeding." *Id*. at 6. Additionally, the government notes

---

[3] Specifically, the government notes that the instant complaint and publicly filed documents related to the criminal cases involve overlapping issues such as whether (1) "Ryan improperly advanced hundreds of millions of dollars to promote his own financial interest"; (2) "Ryan concealed the true condition of his loan portfolio by causing the Bank to make advances to his borrowers to cover repeated overdrafts and service debt"; (3) "Ryan made false statements in loan approval memoranda regarding the condition of collateral, alleged payments by borrowers, and the existence and financial condition of guarantors"; and (4) "Ernst & Young was negligent in failing to 'identify material fraud risks' or 'red flags' related to the charged defendants." R. Doc. 21-1 at 3–5. Additionally, the government points to overlapping issues involving allegedly fraudulent transactions and EY's failure to perform loan reviews that would have revealed the fraud. R. Doc. 21-1 at 6.

that three related civil cases in this district have been stayed in their entirety in order to allow this criminal case to proceed.[4] *Id.* at 16.

### B. EY's Response [R. Doc. 29]

Defendant EY supports the stay, explaining that FDIC-R's complaint is premised on fraud allegedly perpetrated by First NBC's President and that FDIC-R's allegations are drawn from "public filings made in connection with three guilty pleas obtained to date by the Government— including filings that make clear criminal charges are forthcoming against Mr. Ryan." R. Doc. 29 at 1. EY further explains that the related criminal proceedings may establish facts relevant to EY's defense in this matter and that EY employees will likely be witnesses in the criminal cases. *Id.* at 2.

Additionally, EY asserts that to the extent FDIC-R proposes conducting limited discovery despite the stay, such "[p]iecemeal discovery" would be inefficient and duplicative. *Id.* Lastly, EY notes that a related civil case involving the Official Committee of Unsecured Creditors of First NBC Bank Holding has been stayed pending the resolution of this criminal matter and that when that stay is lifted, EY intends to compel arbitration. EY suggests it intends to compel arbitration in this matter as well. As EY explains, "it would make little sense for this case to proceed while the parallel Creditors' Committee Action is stayed, particularly when both cases raise the same threshold issue of arbitrability." *Id.* at 4.

### C. FDIC-R's Opposition [R. Doc. 30]

Plaintiff FDIC-R opposes the motion to stay but does not oppose the motion to intervene. R. Doc. 30. Instead of a complete stay, FDIC-R suggests limiting the instant civil proceeding to

---

[4] These cases are *Cont'l Cas. Co. v. St. Angelo*, No. 19-13382, 2020 WL 425865 (E.D. La. Jan 27, 2020); *Official Comm. Of Unsecured Creditors of First NBC Bank Holding Co.*, No. 19-10341, 2019 WL 3858953 (E.D. La. Aug. 16, 2019); *Acad. Place, LLC v. Ryan*, No. 18-10881, 2019 WL 3974793 (E.D. La. Aug. 22, 2019).

the resolution of preliminary 12(b) motions and EY's anticipated motion to compel arbitration, followed by party-only document discovery, until the criminal matter has concluded. FDIC-R contends this compromise, which the government rejected in filing its motion for a stay, would resolve all of the government's concerns and mutually benefit all parties.

FDIC-R accuses the government of "unnecessarily interfering with an independent federal agency's discharge of its statutory responsibilities" and opposes the complete stay for three general reasons. *Id.* at 1. First, FDIC argues a lengthy stay would impede it from discharging its statutory responsibilities as a Receiver and circumvent Congress's express desire that the resolution of accounting-malpractice claims brought by the FDIC-R be achieved promptly under 12 U.S.C. § 1821(q)(2). *Id.* at 2. Second, FDIC contends a complete stay is unnecessary to prevent civil discovery from impairing or influencing the evidence and testimony in the criminal proceedings because, as noted above, FDIC would be willing to stay oral discovery and limit the civil matter to the resolution of preliminary 12(b) motions and arbitration-related issues until the criminal matter is resolved. Only then, FDIC notes, would the parties begin the oral discovery that could potentially implicate or interfere with the criminal matter. Third, FDIC argues a complete stay would substantially prejudice its ability to resolve this matter and distribute any recovery, particularly because it may take years for the criminal matter to resolve, during which time there is an increased risk "that witnesses' memories may fade, witnesses may become unavailable, and third-party documents may be lost or destroyed." *Id.* at 9.

### D. Government's Reply [R. Doc. 44]

The government has filed a reply to FDIC-R's partial opposition. R. Doc. 44. The government contends the FDIC-R's complaint has already harmed the criminal matter and that, contrary to FDIC-R's assertions, EY employees are critical witnesses in the criminal case. *Id.* at

2. Specifically, the government argues that the civil complaint has already undercut the criminal case because the allegations contained therein, which suggest that EY could have, and should have detected the fraud, "could arguably be used by defendants in a criminal proceeding to construct the defense that they depended on EY to catch their 'mistakes' or that EY's failure to detect the fraud meant there was no fraud." *Id.* at 2. The government also acknowledges the FDIC-R's willingness to cabin the instant proceedings to 12(b) and arbitration-related motions and limit the discovery process to party-only document discovery but notes that "legal issues [can] quickly spillover into factual issues," the resolution of which would require depositions or other fact discovery that could substantially harm the criminal prosecution. *Id.* at 2, 3. For these reasons and the ones set for in the original motion, the government argues that a complete stay of the civil proceedings is warranted until the criminal proceedings are resolved.

## III.    LAW & DISCUSSION

### A.  Federal Rule of Civil Procedure 24

Intervention is governed by Rule 24, which sets forth different standards for intervention as a right and permissive intervention. Rule 24(a), governing intervention as a matter of right, provides:

> On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). In contrast, Rule 24(b), governing permissive intervention, provides:

> On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.

The government argues that it satisfies the standards for both intervention as of right and permissive intervention. R. Doc. 21-1 at 7. The government contends its interest in "managing the scope and manner of discovery in the criminal case, protecting the integrity of the criminal proceedings and the truth-seeking process, and preventing the civil discovery process from impairing or influencing the evidence and testimony that is expected to be offered in the criminal case" is not adequately protected by any other party in this matter. R. Doc. 21-1 at 7–8. Additionally, the Government avers permissive intervention is appropriate because the civil and criminal matters present common questions of law or fact.

This portion of the motion is unopposed, and the Court concludes that intervention is warranted. The Court agrees that the government has a recognizable interest in preventing the civil discovery process from impairing or influencing that scope of discovery in the related criminal matter. Because the civil and criminal cases involve the same underlying subject matter—fraud allegedly perpetrated by individuals affiliated with First NBC—the broader civil discovery process risks "impair[ing] the intended balance between the parties in the criminal case." *Sec. & Exch. Comm'n. v. Mutuals.com, Inc.*, No. CIV.A.3:03-CV-2912-D, 2004 WL 1629929, at *2 (N.D. Tex. July 20, 2004). Further, no party presently involved in the civil case could adequately protect the government's interest, as the FDIC must comply with civil discovery rules that are largely incompatible with the discovery process in the parallel criminal proceeding. For these reasons, the Court concludes that the government has demonstrated a right to intervene in this matter.

**B. Stay**

A district court may, in its discretion, stay a civil action during the pendency of a parallel criminal proceedings if the interests of justice so require. *See United States v. Kordel,* 397 U.S. 1, 12 n. 27 (1970). In the Fifth Circuit, the decision to do so is generally guided by the following six

factors: (1) the extent to which the criminal and civil cases present overlapping issues; (2) the status of the criminal case; (3) the private interest of the plaintiff in speedy resolution and the prejudice caused by delay; (4) the private interests of the defendant; (5) the interest of the court; and (6) the public interest. *See, e.g.*, *Warren v. Geller*, No. CIV. 11-2282, 2013 WL 1455688, at *7 (E.D. La. Apr. 9, 2013). The Court considers each factor in turn.

### 1. The extent to which the criminal and civil cases present overlapping issues

In general, "the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Dominguez v. Hartford Fin. Servs. Grp.*, Inc., 530 F. Supp. 2d 902, 906–07 (S.D. Tex. 2008).

It is clear that the instant case and related criminal proceedings share a number of overlapping, albeit not identical, issues. Although EY is not a criminal defendant or a target in the criminal investigations, the allegations FDIC-R raises are inherently related to the specific factual circumstances underlying the criminal charges that have already been filed and those that are forthcoming.

The government has identified three criminal cases involving the same subject matter as the instant civil action: fraud at First NBC.[5] In fact, the fraudulent actions at issue in the criminal cases are the exact same actions FDIC-R alleges EY should have discovered. The overlapping nature of the issues is bolstered by substantial similarities in language used in the Complaint and the Bills of Information. For example, the Complaint discusses the particulars of the fraud committed by the Bank's President and CEO, Mr. Ryan, including allegations of self-dealing, fake tax credit investments, and fraudulent loans, which is addressed in the Bills of Information

---

[5] These cases are *United States v. Jeffrey Dunlap*, Criminal Action No. 18-99 (E.D. La. May 14, 2018); *United States v. Gregory St. Angelo*, Criminal Action No. 19-55 (E.D. La. March 22, 2019); and *United States v. Kenneth Charity*, Criminal Action No. 19-90 (E.D. La. May 14, 2018).

targeting Dunlap, Charity, and St. Angelo. R. Doc. 1 at 7–8. To the extent FDIC-R believes that allowing this case to progress via preliminary 12(b) motions and motions to compel arbitration would allow the matter to progress independently without implicating any overlapping issues, the Court simple disagrees. The legal issues presented in a 12(b) motion do not exist in a vacuum, and the facts underlying the allegations in the Complaint and the assertion of Defendants' objections are inherently related to those facts at issue in the criminal investigation. Further, although EY employees are not the targets of the criminal prosecution, they will undoubtedly be relevant, material witnesses in the matter as they may be able to provide evidence about the expanse of the fraud. Accordingly, this factor weighs in favor of granting a stay.

   *2. Status of the criminal case*

   This factor requires the Court to consider the status of the criminal case. When a criminal defendant seeks to stay civil discovery, "the justification for obtaining a stay is often strongest before an indictment is handed down." *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. CIV.A. 13-0366, 2015 WL 893447, at *9 (E.D. La. Mar. 2, 2015) (quoting *S.E.C. v. Offill*, No. CIV.A.3:07-CV-1643-D, 2008 WL 958072, at *2 (N.D. Tex. Apr. 9, 2008)).

   Here, three defendants have been charged and the criminal investigation is ongoing. Further indictments are expected. Accordingly, the Court is concerned that the broad discovery permissible in a civil case could potentially disrupt or undermine the grand jury investigations. However, a stay is obviously most necessary when a criminal defendant risks self-incrimination, a risk not present in the instant matter because neither EY nor Gloucester are criminal defendants or targets of the investigation.

   Nevertheless, the Court concludes this factor weighs in favor of a stay. More indictments relevant to the fraudulent scheme are expected, and developments in the criminal investigation

will likely bear on the civil action, whether by narrowing the issues for trial or uncovering facts the parties can use in their own civil claims and/or defenses. The fact that the civil case is in its infancy also weighs in favor of a stay.

3. *The private interest of the plaintiff in speedy resolution and the prejudice caused by delay*

This factor requires the Court to consider the plaintiff's private interest in litigating its case and any prejudice it may incur as a result of a stay. The FDIC-R has an undeniably strong interest in the timely resolution of this matter. Notably, the FDIC-R has a responsibility to bring and resolve these types of lawsuits in order to secure funds with which to repay the Deposit Insurance Corporation. 12 U.S.C. § 1821. This responsibility is significant and statutorily mandated, and Congress has expressed that these types of lawsuits should be resolved expeditiously. *See* 12 U.S.C. § 1821(q)(2) (requiring a court to "expedite the consideration of any case brought by [the FDIC]"). The Court recognizes this interest but emphasizes that a complete stay would not deny Plaintiff's ability to possibly recover from EY and reimburse the FDIC for the losses it sustained; "instead, it will only delay that possible result." *Official Comm. of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan*, No. CV 19-10341, 2019 WL 3858953, at *3 (E.D. La. Aug. 16, 2019) (granting a complete stay in a related case). Further, due to Speedy Trial Act concerns and the parties' representations that the criminal investigation is proceeding swiftly at this time, the Court believes a stay will not exorbitantly protract the civil litigation.

With respect to prejudice, FDIC-R is concerned that during the pendency of the criminal matters, which could take years to resolve, witnesses' memories may fade, witnesses may become unavailable, or documents may be lost or destroyed. R. Doc. 30 at 16. The Court understands this concern but believes they may be overstated. As an initial matter, EY and Gloucester are "well-established firms, and they will be here when the criminal case is done." R. Doc. 44 at 5. Further,

at oral argument, the parties explained that the FDIC-R is already in possession of many EY documents. Additionally, EY witnesses who may be relevant to both the criminal and civil proceedings are likely to be local, as the alleged fraud was perpetrated in New Orleans. Lastly, any claims of prejudice are minimized by the fact that FDIC-R waited almost three years from its appointment as Receiver to file the instant complaint. *See* R. Doc. 1 at 34.

### 4. The private interests of the Defendant

Under this factor, the Court must consider the private interests of the defendant and any burden it might suffer from the imposition of a stay. Here, Defendant EY has indicated that it supports a complete stay in part because the resolution of the criminal matter may establish facts relevant to its defenses. R. Doc. 29. Nevertheless, FDIC contends a stay is not in Defendants' interest because EY and Gloucester are not defendants in the criminal matter and "establishing criminal misconduct would in no way excuse EY from its responsibilities as an auditor." R. Doc. 30 at 18.

This factor clearly weighs in favor of a stay. At oral argument, EY indicated that it was repeatedly lied to during the financial audit process, a fact clearly relevant to its defense of the civil matter, which seeks to impose civil liability on EY for not detecting the fraudulent scheme. Granting a stay at this time would allow the factual record regarding the fraud to be developed and EY to rely on some of these developments in its defense of this matter. Further, it may allow EY to pursue defenses that would facilitate settlement or other means of resolving this matter. In contrast, denying a stay and requiring EY to answer to complaint would force EY to present defenses without a comprehensive understanding of the situation. The Court recognizes that although FDIC-R's proposed compromise would not require EY to *prove* any of its defenses, the

Court finds that a stay is in EY's interest because the criminal proceeding is relevant to the development of the defenses themselves.

5. *The interest of the Court*

This factor requires the Court to consider its own interest in ensuring that justice be served efficiently and effectively. On the one hand, staying the instant matter indefinitely would obviously significantly delay its resolution. However, as the government explains, allowing the criminal case to move forward first will "streamline issues in this civil case, since there will be no need to make rulings on evidentiary or discovery issues in the civil case which may be disposed of by the criminal matter." R. Doc. 21-1 at 16. Indeed, the resolution of certain issues in a criminal case would promote judicial economy by narrowing or at least clarifying the issues presented in the civil case. Additionally, the Court is not convinced that FDIC-R's proposed compromise would save as much time as it suggests. If the parties would be able to expeditiously prepare and litigate 12(b) motions and any forthcoming motion to compel arbitration now, there is no reason that the process will take any longer in the future.

6. *The interest of the public*

Lastly, the public has an interest in seeing that justice is served in both civil and criminal matters. The public is clearly interested in allowing criminal matters to be resolved without being compromised by civil litigation. *See Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir. 1962) ("Administrative policy gives priority to the public interest in law enforcement."); *Tajonera*, 2015 WL 893447, at *10 (noting that the interest in speedy resolution of a civil matter "is subservient to law enforcement's prerogative"); *Official Comm. of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan*, No. CV 19-10341, 2019 WL 3858953, at *4 (E.D. La. Aug. 16, 2019).

Nevertheless, the public clearly also has an interest in allowing the FDIC-R to investigate the very type of malpractice at issue here.

On the whole, however, this factor weighs in favor of a stay. Generally speaking, administrative policy prioritizes the public interest in law enforcement. *See Campbell*, 307 F.2d at 478. The Court is cognizant of the very real risk posed to the criminal investigation by the pendency of the civil action. Even if FDIC-R's proposed compromise would protect the government's ability to preserve the usefulness of its trial witnesses, the very filing of the instant Complaint has already prejudiced the criminal matter to the extent its allegations suggest that EY could have, or should have, detected the fraudulent scheme. Additionally, the Court is concerned that anything save a complete stay would impair the criminal proceeding because the legal issues involved in the resolution of 12(b) motions and arbitration-related motions will inherently spillover into factual disputes. This fear is not merely speculative, as FDIC-R claims, because legal issues do not exist in a vacuum. Legal issues are contextualized by facts and the Court's ruling on those issues would invariably require it to consider and comment upon the facts presented by both sides. Ultimately, although the public clearly has an interest in the resolution of civil matters involving the collapse of First NBC, it has a greater interest in ensuring that those responsible for the collapse are prosecuted.

Considering the six factors set forth above, the Court concludes that a complete stay of this civil action is warranted. Specifically, the issues in this case overlap significantly with those in three currently-pending criminal cases and an unforetold number of cases yet to be filed. The government's investigation into the fraud at the heart of this case is expansive and ongoing, and proceeding with the civil action would invariably pose a great risk to the government's efforts to hold those responsible for the collapse of First NBC accountable. Although this decision clearly

impinges on the FDIC-R's statutorily-mandated interest in a speedy resolution to the civil matter, the Court is simply not convinced that this fact outweighs the palpable risks facing the criminal matter. Further, although the compromised stay proposed by FDIC-R is a creative solution that attempts to balance the interests of all parties, the Court finds it simply unworkable in light of the complexity of this high-profile case and the fact that other civil cases involving the same fraud scheme have been stayed pending the resolution of the criminal matter.

## IV.    CONCLUSION

Based on the foregoing.

**IT IS ORDERED** that the government's Motion to Intervene and Stay, R. Doc. 21, is **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned matter be **ADMINISTRATIVELY CLOSED**. This Court shall retain jurisdiction, and this matter may be reopened, upon motion of any party, if circumstances change.

New Orleans, Louisiana this 13th day of July, 2020.

Eldon E. Fallon
United States District Court