UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORP.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1259** |
| **ERNST & YOUNG LLP** | **SECTION "L" (1)** |

## ORDER AND REASONS

Before the Court is a Motion to Disqualify Plaintiff's Counsel by Defendant Ernst & Young LLP ("EY"). R. Doc. 86. Defendant also requests discovery regarding the share and use of confidential and privileged information, and the destruction of any confidential and privileged documents that have been disclosed to Plaintiff. *Id.* at 1. Plaintiff opposes Defendant's motion to disqualify counsel, and argues that the proper remedy is destruction and/or return of improperly disclosed documents. R. Doc. 104. Having considered the briefing and relevant law, the Court rules as follows.

### I. BACKGROUND

This case arises out of financial statement audits of First NBC Bank and First NBC Bank Holding Company, Inc. ("First NBC" or "Bank") by Ernst & Young LLP in 2014 and 2015. R. Doc. 1 ¶ 1. Plaintiff, the Federal Deposit Insurance Corporation as Receiver for First NBC Bank ("FDIC-R")[1], filed the instant suit to recover damages from Defendants Ernst & Young LLP ("EY") and Gloucester Insurance Ltd. ("Gloucester")[2], alleging that the audits of First NBC were negligently performed, allowing the fraud to proceed undetected and resulting in substantial

---

[1] The State of Louisiana closed First NBC Bank on April 28, 2017, and appointed the FDIC as Receiver. R. Doc. 1 at 4.
[2] Gloucester provided EY with professional liability insurance during the relevant period. R. Doc. 1 ¶ 11.

financial losses. *Id.* ¶ 2. Specifically, FDIC-R alleges that EY failed to design audit procedures to discover material fraud, and accordingly, failed to discover fraud perpetrated by First NBC's President and Chief Executive Officer, Ashton Ryan. *Id.* 1 ¶ 2. Additionally, FDIC-R contends EY identified false statements made by Ryan but failed to investigate the falsehoods or report them to the Audit Committee. *Id.* ¶ 3. FDIC-R further alleges that EY negligently issued an unqualified opinion regarding First NBC's financial statements and internal controls processes. *Id.* FDIC-R characterizes these actions as a breach of EY's professional duties. *Id.*

FDIC-R alleges that First NBC suffered at least $125 million in losses as a result of Ryan's fraudulent conduct. *Id.* In recounting Ryan's allegedly fraudulent practices, FDIC-R explains that Ryan held formal roles as the Bank's founder and CEO in addition to overseeing the lending department and having unilateral authority to approve tax credit investments. *Id.* ¶ 16–19. FDIC-R argues that Ryan, acting in his own interest, "committed fraud at First NBC by repeatedly causing the Bank to advance money through loans and tax credit investments on false pretenses." *Id.* ¶ 20. He further allegedly "advance[d] hundreds of millions of dollars to promote his own financial interests and mask the deteriorating financial condition of his lending and tax credit investment portfolios." *Id.* ¶ 4. Additionally, FDIC-R contends Ryan made numerous "false statements in loan approval memoranda regarding the condition of collateral, alleged payments by borrowers, and the existence and financial condition of guarantors," which were identified in EY's work papers but not acted upon. *Id.* ¶ 20. The Complaint also identifies several other alleged actors in the scheme, including Jeffrey Dunlap, Kenneth Charity, and Gregory St. Angelo. *Id.* ¶ 21–23. FDIC-R contends that these fraudulent practices, and the $125 million loss associated with them, could have been discovered and prevented had EY conducted its audits properly and in accordance with its professional responsibilities.

FDIC-R alleges that EY was engaged to conduct integrated audits in 2014 and 2015 as required by the Sarbanes-Oxley Act. *Id.* ¶ 28–29. An integrated audit requires an auditor to evaluate a company's financial statements and internal controls over financial reporting. *Id.* ¶ 28. During the audits, EY was allegedly given "direct and unfettered" access to the Bank's internal systems and records *Id.* ¶ 30. EY's audit for the 2014 fiscal year represented that the Bank's consolidated financial statements "were fairly stated in accordance with GAAP and free from material misstatement whether due to error or fraud." *Id.* ¶ 32. EY also issued an "unqualified opinion" that the Bank's internal controls over financial reporting were effective. *Id.* ¶ 32. As to the 2015 fiscal year, EY issued an "unqualified audit opinion" regarding the Bank's consolidated financial statements, but an "adverse opinion" regarding the Bank's internal controls due to Ryan's "dominant influence without adequate controls and material weaknesses in the credit department's monitoring over borrowers' ability to repay credits." *Id.* ¶ 33.

FDIC-R identifies a number of alleged failures on EY's part that caused the fraud to remain undiscovered. In particular, FDIC-R alleges that EY failed to exercise professional skepticism while conducting the audits and failed to identify material weaknesses in internal controls despite knowing that Ryan exercised a dominant influence over the Bank's lending and financial statement process, including personally handling a large portfolio of loans and tax credit investments and recklessly advancing tens of millions of dollars to borrowers without meaningful controls." *Id.* ¶ 5. Additionally, FDIC-R argues that EY ignored fraud risks, failed to design audit procedures that would adequately address those risks, and failed to obtain sufficient information to support its audit opinions, relying instead—erroneously—on management's representations. *Id.* ¶ 6. FDIC-R contends these failures constitute breaches of EY's professional duties to conduct the audits in accordance with Public Company Accounting Oversight Board rules, auditing standards, quality

control standards, GAAP and Generally Accepted Auditing Standards, and other professional auditing standards. *Id.* ¶ 39.

Based on the foregoing, FDIC-R brought suit against EY in this Court on April 22, 2020, seeking damages for professional negligence. *Id.* ¶ 133. FDIC-R also brings a direct action against Gloucester, an insurance entity that provided $400 million in professional liability insurance coverage to EY during the relevant period. *Id.* ¶ 138.

On June 1, 2020, the United States filed a Motion in this Court to Intervene and Stay the case under Rule 24 of the Federal Rules of Civil Procedure. R. Doc. 21. On July 13, 2020, this Court granted the government's motion to stay the case due to the overlapping facts between the instant case and the criminal cases related to the Bank's failure. *See* R. Doc. 55 at 10-15.

In the meantime, EY alleges, counsel for FDIC-R in this case obtained confidential and privileged information from the Public Company Accounting Oversight Board ("PCAOB") relating to PCAOB's investigation into the financial statement audits performed by EY. R. Doc. 58-1 at 2. Specifically, they allege that counsel received materials, including thousands of pages of testimony transcripts, in preparation for a deposition of Daniel Belcher, a former auditor with EY, in a proceeding brought by FDIC-R to enforce an administrative subpoena against Belcher in another section of this Court. *Id.* (citing *FDIC v. Belcher*, No. 19-12561). In that case, Judge Zainey ruled against Belcher and enforced the subpoena after concluding that the materials from the PCAOB to the FDIC-R were produced pursuant to a statutory authorization,[3] and therefore the subpoena was not improper in any manner. *See FDIC v. Belcher*, No. 19-12561, 2019 WL Case 6728338 (E.D. La. Dec. 11, 2019). Accordingly, the FDIC's counsel reviewed the material and took Belcher's deposition.

---

[3] The district court based its decision on the "federal functional regulator" statutory exception. U.S.C § 7215(b)(5)(B)(ii)(II)

On October 26, 2020, the Fifth Circuit issued an opinion concluding that the lower court erred when interpreting 15 U.S.C. § 7215(b)(5)(B) so as to authorize the PCAOB to share transcripts of Belcher's deposition testimony with the FDIC-R. *FDIC v. Belcher,* 978 F.3d 959 (5th Cir. 2020). The Fifth Circuit held that none of the confidential and privileged EY materials that the PCAOB had amassed during its investigation into EY should have been provided to the FDIC-R. *Id.* The Fifth Circuit then directed the district court to fashion "some form of meaningful relief," notwithstanding that Belcher had already been deposed, and remanded the case. *Id.* at 961 n.1.

On January 25, 2021, FDIC-R alleges, it forwarded EY's counsel a letter it sent to the PCAOB stating that in light of the Fifth Circuit ruling, it intended to destroy the documents it had obtained from the PCAOB. R. Doc. 86-1 at 11. However, FDIC-R did not commit to destroying all internal documents of FDIC-R counsel reflecting the contents of and documents provided by the PCAOB nor did it intend to recuse any counsel who had reviewed the documents. *Id.*

On January 29, 2021 EY moved for a partial lifting of the stay to address the issues it has raised in this motion. FDIC-R responded by filing a "Renewed Motion to Enforce Administrative Subpoena" in the original *Belcher* matter before Judge Zainey. In their motion to enforce, FDIC-R took the position that no further action other than the destruction of the materials was required to address the PCAOB's erroneous production of EY's confidential and privileged materials. Motion for Renewed Motion to Enforce Administrative Subpoena, *FDIC-R v. Belcher*, No. 19-12561 (E.D. La. Mar. 18, 2021), R. Doc. 120.

Judge Zainey rejected the FDIC-R's bid and explained in his ruling that the FDIC-R had "not demonstrated that Belcher's deposition is without taint." Order Denying Renewed Motion to Enforce Administrative Subpoena, *FDIC-R v. Belcher*, No. 19-12561 (E.D. La. Mar. 18, 2021), R.

5

Doc. 134 at 13. However, Judge Zainey declined to address what specific remedies are now due to Belcher or EY and instead deferred to this Court for determining the appropriate remedy. *Id.*

This Court held a hearing on March 31, 2021 regarding EY's request for a partial lift of the stay. R. Doc. 75. This Court ultimately maintained the stay in deference to the pending criminal proceedings, denying EY's motion without prejudice to EY's ability to file it after the stay of this case was lifted. R. Doc. 76. The court ordered FDIC-R, its counsel, and consultants to preserve any relevant documents in the meantime. *Id.* On FIDC-R's unopposed motion following the conclusion of the criminal proceedings, the Court lifted the stay on March 3, 2023. R. Doc. 85. EY subsequently filed the present motion to disqualify counsel and for other relief.

## II.     PRESENT MOTION

In its Motion, EY asks this Court to disqualify the lead counsel and in-house counsel of the Plaintiff, FDIC-R, as well as anyone else who had access to, obtained, and reviewed volumes of EY's privileged and confidential information in violation of federal law. EY also seeks authorization for discovery regarding the extent to which confidential and privileged information may have been shared and used, in order to remove any taint from the proceedings. Lastly, EY requests the court to order destruction of the confidential and privileged documents, and any other "fruits" derived therefrom. In the present motion, EY argues that the necessary remedy for the PCAOB's violation of the Sarbanes-Oxley Act, as determined by the United States Court of Appeals for the Fifth Circuit in *FDIC, as Receiver for First NBC Bank v. Belcher*, 978 F.3d 959 (5th Cir. 2020), is the disqualification of FDIC-R's counsel who had access to privileged materials and information derived from those materials, as well as discovery to determine the full extent of the taint.

In response, FDIC-R argues that EY is seeking to use a statutory interpretation ruling as a tactical gambit to deny the FDIC-R its chosen counsel. FDIC-R argues that its counsel acted appropriately and consistent with all professional rules in receiving the production from the PCAOB attorneys based on the PCAOB's own interpretation of its statutory authority. FDIC-R avers that, following the Fifth Circuit's determination that the disclosure of documents was unlawful, the proper remedy is to return the production to PCAOB and dispose of any documents referencing it. FDIC-R argues that there was no violation of ethics rules, no bad faith conduct, and that EY suffers no prejudice from the disclosure regarding the audit.

### III.    APPLICABLE LAW

Federal courts have inherent authority to disqualify attorneys in pending litigation when necessary to "'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). However, "disqualification is a harsh consequence" for both the attorney and the client. *Acad. of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.*, 384 F. Supp. 3d 644, 653 (E.D. La. 2018); *see also F.D.I.C. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1313 (5th Cir. 1995). Courts must be wary that a motion to disqualify is not being used merely as a "'procedural weapon' to advance purely tactical purposes." *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992). Thus it is required that "'a court engage in a "painstaking analysis of the facts and precise application of precedent'" when determining whether disqualification is an appropriate remedy. *Acad. of Allergy & Asthma in Primary Care*, 384 F. Supp. 3d at 653 (E.D. La. 2018) (quoting *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174 (5th Cir. 1979)).

Motions to disqualify in the Fifth Circuit are governed by state and national ethical standards, but "the rule of disqualification is not mechanically applied." *Church of Scientology of California v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980). Rather, the Fifth Circuit has concluded that in determining the appropriate remedy, "all of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *U.S. Fire Ins. Co.,* 50 F.3d at 1314. "The Local Rules 'are the most immediate source of guidance for the district court.'" *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 559 F. Supp. 3d 530, 535 (E.D. La. 2021) (quoting *U.S. Fire Ins. Co.*, 50 F.3d at 1312). The Rules of Professional Conduct of the Louisiana State Bar ("Louisiana Rules") are incorporated in the Local Rules for the Eastern District of Louisiana. LR 83.2.3. Louisiana Rule 4.4(b) provides that,

> A lawyer who receives a writing or electronically stored information that, on its face, appears to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that the writing or electronically stored information was not intended for the receiving lawyer, shall refrain from examining or reading the writing or electronically stored information, promptly notify the sending lawyer, and return the writing or delete the electronically stored information.

However, "[i]n addition to these ethical standards, the Court also considers the public interest and the litigants' rights." *Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC*, No. 07-2774, 2008 U.S. Dist. LEXIS 63133, at *6-7 (E.D. La. July 22, 2008). In the Fifth Circuit, it is appropriate for courts to consider "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *U.S. Fire Ins. Co.*, 50 F.3d at 1314 (quoting *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992)).

IV. **DISCUSSION**

This Court recognizes that attorney disqualification is a severe penalty for litigants. "All

8

of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *U.S. Fire Ins. Co.*, 50 F.3d at 1314. The right for a party to choose his own counsel is an "important societal right" which should not be abrogated by the "inflexible application of a professional rule." *Id.* "An attorney may be disqualified only when there is 'a reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interests underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice." *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979) (quoting *Woods v. Covington Cty. Bank*, 537 F.2d 804, 812-13 (5th Cir. 1976)).

    Louisiana Rule 4.4 requires that a lawyer promptly return documents or information that on their face appear to be subject to the attorney-client privilege or otherwise confidential, and where it is clear that the information was not intended for the receiving lawyer. FDIC-R argues that this rule does not apply in the current instance, because PCAOB's Board of Directors intentionally decided to share the documents in question based on their understanding of their lawful authority. See Ex. G ¶¶ 59 & Ex. 1. FDIC-R counsel received the documents only after attorneys in the PCAOB Division of Enforcement and Investigations advised the FDIC-R that the PCAOB Board had approved of their production. *Id.* When EY later objected to the production, the PCAOB disagreed with EY's understanding of the statute, reaffirmed its view that it had the authority to share the materials, and stated that "the determination whether to provide documents, testimony, or other information pursuant to [15 U.S.C. § 7215(b)(5)(B)] . . . rests squarely with the [PCAOB]." R. Doc. 86-2, pp. 40-42 of 72.

    In addition to the PCAOB's interpretation of its own authority under the statute, a sitting federal judge—Judge Zainey—twice agreed with the PCAOB's interpretation of the law. Thus,

9

the FDIC-R's counsel received an intentional production of documents from counsel for a government-created entity carried out under the approval of the entity's board of directors and later approved by Judges. Rule 4.4 only governs materials that are, on their face, subject to the attorney-client privilege and for which it is clear that the materials were not intended for the receiving lawyer. Under Rule 4.4, counsel's conduct is evaluated based on the circumstances when counsel acted. The Fifth Circuit's later ruling that the production was improper does not negate the circumstances at the time of production under which the production was deemed authorized by a number of reasonable lawyers (including Judge Zainey and the PCAOB's attorneys). Importantly, the Fifth Circuit did not find fault with the FDIC-R for receiving the materials, but merely decided that PCAOB's interpretation that production was authorized was faulty. This Court does not find that the FDIC-R's counsel violated Rule 4.4.

However, while "the relevant local and national ethical canons provide a useful guide for adjudicating motions to disqualify, they are not controlling." *U.S. Fire Ins. Co.*, 50 F.3d at 1314. The Court should "also take into account the standards of the profession, the public interest, and the litigant's rights" in determining whether disqualification is proper, which may include the possibility or public perception of impropriety. *In re Dresser*, 972 F.2d at 543, 544. This Court does not discount the FDIC-R's attorneys argument that, in reviewing the documents produced to it by the PCAOB, they acted on the reasonable belief—their own and that of others—that the production was statutorily authorized. The Court also credits their assurance that the FDIC-R halted review of the materials pending decisions by Judge Zainey and the Fifth Circuit, and agreed to preserve the documents as well as any documents referencing them. R. Doc. 104 Ex. H ¶ 6, Ex. 7; see also R. Doc. 76. *See Burt Hill, Inc. v. Hassan*, No. CIV.A. 09-1285, 2010 WL 419433, at *4-5 (counsel's "responsible handling" of documents "once it became apparent that

their conduct would be subject to scrutiny" supported denial of disqualification); see also Ex. E Ex. 1 ¶ 66; Ex. D ¶¶ 55-57. This Court does not find that FDIC-R's conduct demonstrates bad faith.

However, a lack of bad faith does not make it possible for FDIC-R's counsel to un-see or forget thousands of pages of materials that the Fifth Circuit ruled they were not supposed to see. EY argues that the production of materials and the alleged taint of the FDIC-R counsel has and would unfairly prejudice EY. Perhaps most relevant here, EY asserts that harm arises because information can "never be erased" from the minds of counsel who received certain information. E.g., R. Doc. 86-1 at 14-15; R. Doc. 86-3 ¶ 77 (quoting *Camden v. Maryland*, 910 F. Supp. 1115, 1124 (D. Md. 1996)). The FDIC-R, in response, argues that the PCAOB production consists of the same categories of documents—containing the same underlying factual information—which the FDIC-R had already obtained through its own subpoena to EY, including audit work papers, EY correspondence, and EY audit records. R. Doc. 104. The FDIC-R argues that, while it may not be authorized to view the PCAOB deposition transcripts, the underlying factual information contained therein would be subject to inevitable disclosure. *Id.*

Further, FDIC-R argues that the only documents covered by the PCAOB statute that were improperly disclosed were an informational questionnaire and the transcripts of depositions taken by the PCAOB. *See* Ex F. ¶ 3; R. Doc. 86-2, pp. 40-42 of 72. FDIC-R notes that the 15 U.S.C. § 7215(b)(5)(A) also authorizes the PCAOB to provide protect materials to government agencies and regulators for use in public litigation, which includes production to the Federal Reserve. The FDIC-R argues that this statute means that PCAOB could have produced the documents to the Federal Reserve and the Federal Reserve could then produce them to the FDIC-R. R. Doc. 104 at 24. The PCAOB, it argues, simply produced the documents to the wrong

entity. As a result, the FDIC-R had multiple avenues for receiving the information in the produced materials, and the produced materials themselves, thus vitiating any idea of prejudice. *Id.* EY contests that this argument is irrelevant because the FDIC-R was not acting as a regulator, but rather "is bound by the rules that the bank itself would encounter in litigation," and therefore, it could not have accessed these materials. R. Doc. 109 at 10.

Most germanely, this is not what happened here. The FDIC-R did not come into the information at issue here through discovery of the same facts in this litigation, nor did it receive the documents from the FDIC-R via the Federal Reserve through the mechanism of 15 U.S.C. § 7215(b)(5)(A). These are counterfactual chains of events that could have occurred, but did not occur. The actual path that these documents took—production by the PCAOB directly to the FDIC-R—was deemed impermissible by the circuit court.

This Court recognizes that disqualification is a harsh consequence that affects the Plaintiff's right to choose its own counsel and the attorneys' ability to freely practice law. The FDIC-R argues that replacing counsel, who have deployed thousands of hours of work, "would result in significant waste of resources at great expense of the receivership." R. Doc. 104 at 21. The Court does not underestimate the ramifications that disqualification will have for the FDIC-R, especially since the Fifth Circuit did not find, and this Court does not find, evidence of bad faith or wrongdoing. However, in this instance, the Fifth Circuit has found clearly that a party's attorneys viewed documents they were not supposed to view, and that they had these documents in their possession for a number of years. Given the finding of the Fifth Circuit and the resulting prejudice that could accrue to the Defendant—in addition to this Court's interest in ensuring that this litigation continues free of any taint of impropriety—the appropriate remedy here is disqualification of FDIC-R's counsel.

## V.     CONCLUSION

For the foregoing reasons, Defendant Ernst and Young LLP's Motion to Disqualify Counsel is **GRANTED**. FDIC-R must substitute new counsel and must return to EY and/or destroy all material provided by the PCAOB. This should be done within 60 days, or by August 15, 2023, unless extended for good cause. The Court does not see a need at this time to permit discovery on this issue. Accordingly, Defendant's motion is **DENIED** in that regard.

New Orleans, Louisiana, this 15th day of June, 2023.

_____
**UNITED STATES DISTRICT JUDGE**