UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NBC BANK,**<br>　　　　　　　　　**Plaintiff,**<br><br>　　v.<br><br>**ERNST & YOUNG LLP & GLOUCESTER INSURANCE LTD.**<br>　　　　　　　　　**Defendants.** | **CIVIL ACTION NO.:  2:20-cv-1259**<br><br>**SECTION "L"**<br><br>**JUDGE: ELDON E. FALLON**<br><br>**MAGISTRATE JUDGE: JANIS VAN MEERVELD** |

**MEMORANDUM IN SUPPORT OF MOTION TO STAY LITIGATION PENDING PROPOSED ARBITRATION BETWEEN ERNST & YOUNG LLP AND THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NBC BANK**

**MAY IT PLEASE THE COURT:**

Gloucester Insurance Limited respectfully submits this Memorandum in Support of its Motion to Stay Litigation Pending Proposed Arbitration Between Ernst & Young LLP and the Federal Deposit Insurance Corporation as Receiver for First NBC Bank.

### I.　INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Court needs little introduction to this case. FDIC, as the receiver of First NBC Bank, sued Ernst & Young LLP, or "EY," and EY's professional liability insurer, Gloucester. FDIC claims that EY failed to discover financial misconduct by First NBC Bank officers.

EY recently moved to compel the arbitration of its dispute with FDIC per the underlying professional services agreements to which Gloucester is not a party. If the Court compels arbitration and stays the case as between FDIC and EY, FDIC's claims against Gloucester will nevertheless remain pending and "live" in this Court.

FDIC joined Gloucester in this litigation under the Louisiana Direct Action Statute, which grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. The statute does not create an independent, substantive cause of action against the insurer. Accordingly, FDIC's rights (if any) against Gloucester are wholly derivative of its rights (if any) against EY, meaning FDIC's *prima facie* arbitration and litigation case will be substantively identical.

The spectre of collateral, multi-forum proceedings regarding the same factual and legal issues raises many concerns. At a minimum, the redundant proceedings will waste the time and resources of all involved. But more important still, litigation between FDIC and Gloucester will, inevitably, have a corrosive effect on the FDIC-EY arbitration. For example, Gloucester has no firsthand knowledge of EY's work, necessitating EY's direct involvement in the litigation's discovery and thus depriving EY of the efficiencies and predictability it bargained for when it included arbitration clauses in its professional services agreements. Making matters worse, the dual-track nature of the proceedings will pose a serious risk of inconsistent judgments, potentially generating additional disputes concerning claim and issue preclusion and encouraging a race to judgment within the proceedings.

This problem is not, however, new. Other sections of this Court and other federal district courts within the circuit routinely stay cases pending the completion of arbitration.[1] And a stay of a direct-action suit is appropriate when a plaintiff's case against an insured is arbitrable.[2]

---

[1] *See Broussard v. First Tower Loan, LLC*, 2016 WL 879995 (E.D. La. Mar. 8, 2016); *Childers v. Rent-A-Ctr. E., Inc.*, 2021 WL 5386211 (E.D. La. Nov. 18, 2021); *Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, 2013 WL 2903083 (E.D. La. June 12, 2013); *Clean Pro Carpet & Upholstery Care, Inc. v. Upper Pontalba of Old Metairie Condo. Ass'n, Inc.*, 2021 WL 2948923 (E.D. La. July 14, 2021); *Med–Im Dev., Inc. v. Gen. Elec. Capital Corp.*, 2008 WL 901489 (S.D. Tex. Mar. 31, 2008); *Qualls v. EOG Res., Inc.*, 2018 WL 2317718 (S.D. Tex. May 22, 2018); *Jose Escalera v. Murphy Well Control, LLC*, 2023 WL 7181264 (W.D. Tex. Oct. 31, 2023).

[2] *Francisco v. Stolt-Nielsen, S.A*., 2002 WL 31697700, *6 (E.D. La. Dec. 3, 2002) ("Were the Court to first compel arbitration with signatories and then permit plaintiff to proceed in a second lawsuit against the signatory's parent

- 3 -

The Fifth Circuit and other sections of this Court have developed a four-part test to determine when a court should stay litigation between some parties pending the completion of arbitration between other parties. Those factors are (1) whether—as here—the arbitrated and litigated disputes involve the same operative facts; (2) whether—as here—the claims asserted in the arbitration and litigation are inherently inseparable; (3) whether—as here—continued litigation will critically and negatively affect the arbitration; and (4) whether—as here—allowing the arbitration to proceed to conclusion will narrow the remaining issues for the litigation. The alignment of each factor in this case overwhelmingly supports one outcome: an order from this Court staying FDIC's action against Gloucester so that FDIC and EY can arbitrate their dispute to conclusion without interference or waste.

Discussion follows.

## II.    THE RELEVANT BACKGROUND

This dispute arises from the failure and ensuing receivership of First NBC Bank.[3] Relevant here, First NBC Bank's parent company, First NBC Bank Holding Company or the "Holding Company," hired EY to perform professional services for First NBC Bank.[4] Boiled down—the complaint spans 141 paragraphs, few of which concern Gloucester—FDIC asserts that "EY's professional negligence in auditing the consolidated financial statements of [First NBC Bank and the Holding Company] in audit years 2014 and 2015" caused "at least $125 million in damages."[5] FDIC alleges that "Gloucester provided $400 million in professional

---

corporation and insurer, the arbitration proceedings previously ordered would be effectively rendered meaningless. Therefore, the Court grants defendants' request to stay plaintiff's claims against Steamship Mutual Underwriting Association Limited.").
[3] *See* Doc. 1, ¶ 9 (discussing the Louisiana Office of Financial Services' closure of First NBC Bank and its appointment of FDIC as the receiver and successor to the bank's "rights, titles, and privileges[.]").
[4] *See id*. at ¶¶ 26-27.
[5] *Id*. at ¶¶ 2-3; *see also id*. at ¶¶ 123-124.

liability insurance coverage, with a $100 million deductible, to EY[.]"[6] FDIC sued Gloucester under the Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269.[7]

Gloucester's codefendant and insured, EY, responded to FDIC's suit by moving, *inter alia*, to compel arbitration under EY's contracts with the Holding Company.[8] As EY correctly contends, FDIC—standing in First NBC Bank's shoes—must arbitrate its claims against EY arising from the EY / Holding Company contracts through direct benefit estoppel.[9]

Given EY's well-founded motion to compel arbitration, Gloucester now moves the Court to stay FDIC's claims against it pending the completion of arbitration between FDIC and EY.

### III.   ARGUMENT AND AUTHORITIES

**A.   The Court Should Stay FDIC's Action Against Gloucester Pending the Outcome of the Proposed EY / FDIC Arbitration**

    **1.   The Court Considers Four Factors When Exercising Its Discretion to Stay Litigation Against One Party Pending Arbitration by Other Parties**

The Court possesses the "inherent" power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Broussard v. First Tower Loan, LLC*, 2016 WL 879995, at *5 (E.D. La. Mar. 8, 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

The Fifth Circuit and the district courts within the circuit have developed a four-part test for resolving motions to stay continued litigation against a non-arbitrating party (here, Gloucester) pending the completion of arbitration between other parties (here, FDIC and EY).

The first three factors come from Fifth Circuit precedent and assess whether "(1) the arbitrated and litigated disputes involve[] the same operative facts; (2) the claims asserted in the

---

[6] *Id.* at ¶ 137.
[7] *Id.* at ¶ 139.
[8] *See*, *generally*, Doc. 145-1.
[9] *See*, *e.g.*, *id.* at pp. 2-3.

arbitration and litigation [are] 'inherently inseparable'; and (3) the litigation ha[s] a 'critical impact' on the arbitration." *See Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004)).

Regarding the third "critical impact" factor, the *Waste Management* court explained that the issue "is not ultimately one of weighing potential harm to the interests of the non-signatory [here, Gloucester], but of determining whether proceeding with litigation will destroy the signatories' right [here, EY's right] to a meaningful arbitration." 372 F.3d at 343. The harm to a party's "right to a meaningful arbitration" may manifest in the form of "inconsistent results" between the proceedings. *Id.* at 345. That harm may also manifest in terms of undue influence should the litigation outpace the arbitration, as an arbitrator may "be strongly influenced to follow the court's determination." *See id.*

Several sections of this Court have adopted a fourth factor by taking the "critical impact" factor and inverting it, further asking whether the preclusive effect of the arbitration will simplify and expedite the collateral litigation. *See Broussard v. First Tower Loan, LLC*, 2016 WL 879995, at *6-7 (E.D. La. Mar. 8, 2016) (maintaining discretionary stay because, *inter alia*, "the potential preclusive effect of the arbitral proceedings in litigation may benefit the parties and avoid the waste of judicial resources."); *Childers v. Rent-A-Ctr. E., Inc.*, 2021 WL 5386211, at *6 (E.D. La. Nov. 18, 2021) ("[C]ourts in this Circuit have found that when arbitration may benefit the parties to the litigation, that is sufficient to favor a discretionary stay."); *Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, 2013 WL 2903083, at *7 (E.D.

La. June 12, 2013) ("[T]he Court notes that the outcome of arbitration in this case may be helpful to litigation, lending further support to the issuance of a temporary stay.").[10]

Applied to this case, each of these factors presents a sufficient basis for a stay, and—when considered together—they overwhelmingly support that outcome.

> 2. **Factors One and Two: The Court Should Stay FDIC's Action Against Gloucester Because its Claims Against EY and Gloucester Involve the "Same Operative Facts" and are "Inherently Inseparable"**

Gloucester performed no professional services for First NBC Bank. Instead, Gloucester insures EY against errors or omissions claims asserted by EY's clients. FDIC's sole vehicle for joining Gloucester as a defendant in this litigation is the Louisiana Direct Action Statute, which "grants a **procedural right of action** against an insurer where the plaintiff has a substantive cause of action against the insured.'" *Gorman v. City of Opelousas*, 2013-1734 (La. 7/1/14), 148 So. 3d 888, 896 (emphasis original). The statute "does not create an independent cause of action against the insurer[.]" *Descant v. Administrators of Tulane Educ. Fund*, 93-3098 (La. 7/5/94), 639 So. 2d 246, 249.

Given the above, it is difficult to imagine a case that better meets the first two *Rainier / Waste Management* factors—identical operative facts and inherently inseparable claims—in favor of a stay. Under Louisiana law, FDIC possesses no cause of action against Gloucester, and Gloucester's liability to FDIC, if any, is wholly derivative of EY's liability to FDIC, if any. Thus, FDIC's actions against EY and Gloucester "involve the same operative facts[,]" and FDIC's claims against EY are "inherently inseparable" from its claims against Gloucester. These considerations weigh completely in favor of a stay.

---

[10] *See also Med–Im Dev., Inc. v. Gen. Elec. Capital Corp.*, 2008 WL 901489, at * 9 (S.D. Tex. Mar. 31, 2008) (granting a discretionary stay because the litigation would "involve much the same evidence developed in arbitration"); *Qualls v. EOG Res., Inc.*, 2018 WL 2317718, at *2 (S.D. Tex. May 22, 2018) (finding discretionary stay appropriate when "the nonarbitrable claims will require the resolution of issues that will be resolved during arbitration").

3. **Factor Three: The Court Should Stay FDIC's Action Against Gloucester Because Continued Litigation between FDIC and Gloucester Will Impermissibly Destroy EY's Right to a Meaningful Arbitration**

The third *Rainier / Waste Management* factor assesses whether the litigation will have a "critical impact" on the arbitration. The Court's ultimate inquiry is whether continued litigation between FDIC and Gloucester will "destroy" EY's right to "meaningful arbitration[]" against FDIC. *Waste Mgmt.*, 372 F.3d at 343.

Allowing FDIC to litigate its claims against Gloucester would destroy EY's right to a meaningful arbitration. Consider the situation if the Court compelled arbitration between FDIC and EY while allowing FDIC to litigate its identical merits claims against Gloucester. Since Gloucester has no firsthand knowledge of any issue between FDIC and EY, FDIC's only way to factually advance its claim against Gloucester is to propound third-party fact discovery to EY and EY's employees. EY's necessary participation in the FDIC-Gloucester litigation will affect all prehearing arbitral discovery, critically impacting those proceedings.

But the damage that the litigation will inflict on the arbitration will not end once discovery is complete. After discovery, FDIC and Gloucester might also file dispositive motions in this Court regarding EY's conduct. So, too, for FDIC and EY in the arbitral proceeding. But such motion practice could lead to inconsistent results between the arbitration and the litigation, thus undermining EY's arbitration rights. *See Waste Mgmt.*, 372 F.3d at 345 ("Allowing the instant litigation to proceed would risk inconsistent results[] and substantially impact the arbitration.") (quotations omitted). Relatedly, should the litigation outpace the arbitration, this Court's decisions could dictate the result of the arbitration, as the "arbitrator would necessarily be strongly influenced to follow the [C]ourt's determination[s]." *Id*. And it is possible that trial in the litigation will occur before the arbitral hearing (indeed, FDIC might prefer it that way).

The reality is that the FDIC-Gloucester litigation cannot peaceably coexist with ongoing FDIC-EY arbitral proceedings. Under *Waste Management*, the litigation yields to the arbitration. The Court should thus stay FDIC's action against Gloucester to prevent FDIC from undermining EY's right to a meaningful arbitration *via* a merits proxy war waged in this litigation.

  4. **Factor Four: Staying Litigation Will Prevent Wasteful Parallel Proceedings and Will Streamline the Litigation Once Arbitration is Complete**

The inverse of the "critical impact on the arbitration" factor is also true: If the Court stays FDIC's action against Gloucester until the completion of arbitration, there may be little for FDIC and Gloucester to litigate. *See Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) ("As a general matter, arbitral proceedings *can* have preclusive effect" on litigation.) (italics original). But that is a feature—not a bug—of staying FDIC's action against Gloucester.

In *Landis*, the Supreme Court empowered federal district courts to use stays to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. at 254. One section of this Court determined that allowing arbitral proceedings to narrow the issues for related litigation is, **alone**, a sufficient basis for a stay. *See Childers v. Rent-A-Ctr. E., Inc.*, 2021 WL 5386211, at *6 (E.D. La. Nov. 18, 2021) ("[C]ourts in this Circuit have found that when arbitration may benefit the parties to the litigation, that is sufficient to favor a discretionary stay."). This Court should follow *Childers* since the arbitration between EY and FDIC could resolve all issues save for coverage between FDIC and Gloucester.

Further, staying FDIC's action against Gloucester is justified to avoid the universally disfavored waste arising from parallel proceedings on the same topic. *Francisco v. Stolt-Nielsen, S.A.*, 2002 WL 31697700, at *6 (E.D. La. Dec. 3, 2002) (staying plaintiff's civil action against insurer pending the outcome of plaintiff's arbitration against the insured); *Mosaic Underwriting*, 2013 WL 2903083, at *7 ("[T]he Court notes that the outcome of arbitration in this case may be

helpful to litigation, lending further support to the issuance of a temporary stay."); *Broussard*, 2016 WL 879995, at *6-7 ("[T]he potential preclusive effect of the arbitral proceedings in litigation may benefit the parties and avoid the waste of judicial resources.").[11]

**B.      Gloucester Reserves All Rights and Defenses, Including to Compel Arbitration under the Applicable Insurance Policy**

A discretionary stay of the litigation between FDIC and Gloucester is warranted for the reasons outlined above. But in an abundance of caution, Gloucester reserves all rights and defenses against FDIC, including the right to demand that FDIC arbitrate its claims against it in London under the arbitration clause in Gloucester's policy and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2571, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (1970), implemented by 9 U.S.C. § 201, *et seq*.

## IV.      CONCLUSION

Gloucester asks the Court to enter an order staying the litigation between it and FDIC so that FDIC and EY can arbitrate their dispute to conclusion.

*        *        *

---

[11] *See also Med–Im Dev., Inc. v. Gen. Elec. Capital Corp.*, 2008 WL 901489, at * 9 (S.D. Tex. Mar. 31, 2008) (granting a discretionary stay because the litigation would "involve much the same evidence developed in arbitration"); *Qualls v. EOG Res., Inc.*, 2018 WL 2317718, at *2 (S.D. Tex. May 22, 2018) (finding discretionary stay appropriate when "the nonarbitrable claims will require the resolution of issues that will be resolved during arbitration.").

Respectfully submitted,

**PHELPS DUNBAR LLP**

/s/ *Kevin Welsh*
Marshall M. Redmon (La. Bar Roll No. 18398)
R. Harrison Golden (La. Bar Roll No. 38468)
Melissa H. Redmon (La. Bar Roll No. 39072)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
marshall.redmon@phelps.com
harris.golden@phelps.com
melissa.redmon@phelps.com

Kevin W. Welsh (La. Bar Roll No. 35380)
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 346-0285
Telecopier: (225) 381-9197
kevin.welsh@phelps.com

**ATTORNEYS FOR DEFENDANT GLOUCESTER INSURANCE LIMITED**

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2023, the foregoing was electronically filed using the CM/ECF system which will provide notice to all counsel of record.

/s/ *Kevin Welsh*