UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NBC BANK | * * * * | CIVIL ACTION NO. 20-1259 SECTION: "L"(1) |
| VERSUS | * * | JUDGE ELDON E. FALLON |
| ERNST & YOUNG LLP AND GLOUCESTER INSURANCE LTD. ************************************ | * * * | MAGISTRATE JUDGE JANIS VAN MEERVELD |

ORDER AND REASONS

This lawsuit is one of the many arising out of the demise of First NBC Bank. The receiver now representing the interests of the Bank has sued the auditing company that allegedly should have identified material fraud risks and should have detected fraudulent conduct by the Bank's President and Chief Executive Officer. Presently before the Court is the Motion to Intervene (Rec. Doc. 111) filed by the trustee that represents the interests of the holding company of the bank. Because the holding company's claims against the auditing company are separate and distinct from the claims asserted by the bank (and are being pursued by the trustee in a separate lawsuit/arbitration), the Court finds that the holding company is not entitled to intervene in this lawsuit and the Motion to Intervene (Rec. Doc. 111) is DENIED.

Background

In April 2017, the Louisiana Office of Financial Institutions closed First NBC Bank (the "Bank") and appointed the Federal Deposit Insurance Corporation as receiver ("Receiver"). By federal statute, the Receiver has succeeded to "all rights, titles, powers, and privileges of the [Bank], and of any stockholder, member, accountholder, depositor, officer, or director of [the Bank] with respect to [the Bank] and the assets of [the Bank]." 12 U.S.C. § 1821(d)(2)(A).

The Receiver filed this lawsuit against Ernst & Young LLP ("EY") and its insurer Gloucester Insurance Ltd. asserting a claim for professional negligence. EY was the independent external auditor for First NBC Bank Holding Company (the "Holding Company"), and beginning with the 2014 Audit, conducted integrated audits over both the financial statements and internal controls over financial reporting. Because the Bank was the Holding Company's sole material asset, the Holding Company's financial statements were consolidated with the Bank's financials.

The Receiver alleges that it has suffered at least $125 million in damages caused by EY's professional negligence in auditing the financial statements of the Bank and the Holding Company. Among other things, it alleges that EY issued unqualified opinions, failed to design audit procedures to detect for material fraud, and failed to detect repeated fraudulent conduct by the Bank's President and Chief Executive Officer Ashton Ryan.[1] Ryan's misconduct included fraudulent and reckless lending. The Receiver alleges that had EY competently performed the audits, it would have detected Ryan's misconduct during the 2014 and 2015 audits, Ryan would have been removed by the Bank, and over $125 million in damages caused by Ryan's misconduct would have been avoided.

According to the Receiver, EY knew that the Bank intended to use and rely upon its audit reports. Thus, although the Bank did not engage EY, the Receiver claims that EY is responsible for the damage suffered by the Bank as a result of EY's negligence in performing the 2014 Audit and 2015 Audit.

The present Motion to Intervene was filed by Stephen B. Darr, as Litigation and Distribution Trustee for the Litigation and Distribution Trust, formerly the Official Committee of Unsecured Creditors of the Holding Company (the "Trustee"). The Holding Company initiated

---

[1] Ryan was convicted for bank fraud and making false statements in bank records in February 2023.

bankruptcy proceedings in 2017 and the Committee was granted standing to assert all claims the Holding Company may have had. The Trustee claims that he owns the claims that the Receiver is attempting to assert against EY. He argues that he is entitled to intervene because the intervention is timely and because he has a substantial interest in the subject of this action. He argues that the Receiver does not have standing to bring claims against EY, and he argues that numerous courts have allowed holding companies to pursue direct claims against persons serving both the holding company and the bank. He insists that the Receiver may only pursue claims that could have been brought by the Bank. Finally, he argues in the alternative that he should be granted permissive intervention because of the common defendants and common claims.

In an earlier filed lawsuit, the Trustee has asserted claims for breach of contract and professional negligence against EY and certain individual auditors arising out of alleged negligence in performance of the 2014 and 2015 audits. The Receiver intervened in that lawsuit alleging that it owned the claims asserted by the Trustee against EY and the Auditors. After the filing of the Motion to Intervene in the present case, the District Judge Africk presiding in the Trustee's case ruled that because the contract for the audits was between the Holding Company and EY, the Holding Company had its own right to sue for breach of contract and professional negligence. Aaron v. Illinois National Insurance Co., Civ. A. No. 22-09, ECF No. 449, at 14-16 (E.D. La. Nov. 8, 2023). Judge Africk found that "[m]ost courts addressing [the scope of 12 U.S.C. §1821(d)(2)(A)(i)] have held that the statute transfers the derivative claims of a bank's shareholders to the FDIC, but not the direct claims." Id. at 6. Thus, Judge Africk held that the claims asserted by the Trustee on behalf of the Holding Company against EY and the auditors belonged to the Holding Company, and not the Bank. Id. at 14-16. The Receiver has appealed the court's ruling.

The Receiver opposes the Trustee's motion to intervene in this case, arguing that the Trustee has no legally protectable interest in the Receiver's claim against EY. It insists that its claims rest on harm to the Bank and that such claims belong solely to the Receiver. It argues that any economic interest the Trustee has in the insurance proceeds that would pay any judgment or settlement to the Receiver in this case is not a sufficient interest to implicate intervention under Rule 24. In any event, the Receiver argues that the insurance proceeds are not the only source of recovery for the Receiver in this case and the Trustee in its case because EY is a large public accounting firm. The Receiver cites Judge Africk's ruling in the Trustee's case that claims that rest on harm to the Bank belong exclusively to the Receiver. It insists that the Trustee has offered no legal basis for an interest in the claims it asserts against EY here for losses to the Bank. It points out that the Trustee himself has argued that his claims are separate and distinct from injuries to the Bank. It adds that the Trustee can protect his interests in the arbitration of his claims against EY.

Finally, the Receiver argues that permissive intervention would also be improper because allowing his participation would undermine judicial economy and prejudice the Receiver's rights.

EY, for its part, filed a response reporting that it takes no position on the Motion to Intervene. It points out that in its Motion to Compel Arbitration, or, in the Alternative, to Dismiss, it has argued that if the Receiver's claim in this lawsuit is not compelled to arbitration, then it must be dismissed because Louisiana law imposes a privity requirement restricting which parties may sue an auditor and the Receiver cannot satisfy that requirement. But EY recognizes that the merits of this argument need not be addressed by the Court to resolve the Motion to Intervene.

The Trustee did not file a reply memorandum.

Law and Analysis

1. *Standard for Leave to Intervene*

A right to intervene exists where the intervenor has an unconditional right to intervene by statute or where the intervenor "claims an interest relating to the property or transaction that is the subject matter of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Courts also require that the motion to intervene is timely. See Texas v. United States, 805 F.3d 653, 657 (5th Cir. 2015)

To satisfy the requirement that the potential intervenor has an interest related to the property or transaction that forms the basis of the controversy, the potential intervenor must demonstrate an interest that is "direct, substantial, [and] legally protectable." Saldano, 363 F.3d at 551 (quoting John Doe No. 1 v. Glickman, 256 F.3d 371, 379 (5th Cir. 2001)) (alteration in original). "[T]he inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." Texas, 805 F.3d at 657. "A property interest, for example, is 'the most elementary type of right that Rule 24(a) is designed to protect,' because it is concrete, specific to the person possessing the right, and legally protectable." Id. at 658 (quoting Diaz v. S. Drilling Corp., 427 F.2d 1118, 1124 (5th Cir. 1970)). Thus, a plaintiff's former attorneys may intervene to assert their right to any judgment, Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 54 (5th Cir. 1970), an insurer may intervene to protect its subrogation interest in a plaintiff's recovery, Chenevert v. Travelers Indem. Co., 746 F.3d 581, 588 (5th Cir. 2014), and the government may intervene to assert a tax lien over funds that one of the parties seeks to recover through the pending litigation, Diaz v. S. Drilling Corp., 427 F.2d 1118, 1124 (5th Cir. 1970). But it is not enough when a proposed intervenor simply prefers one outcome over the other for solely

ideological, economic, or precedential reasons. Texas, 805 F.3d at 658. For example, courts have held that a party's economic interest in insurance proceeds as a potential source of funds for its recovery in tort does not entitle that party to intervene as of right in a separate lawsuit between the insured tort-feasor and its insurer regarding the scope or existence of insurance coverage. E.g., Liberty Mut. Insurance Co. v. Treesdale, Inc., 419 F.3d 216, 221 (3d Cir. 2005); In re HealthSouth Corp. Ins. Litig., 219 F.R.D. 688, 693 (N.D. Ala. 2004).

Even where someone is not entitled to intervene as of right, the court may nonetheless permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Id. R. 24(b)(3). Courts should also consider "whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." League of United Latin Am. Citizens, Council No. 4434 v. Clements, 884 F.2d 185, 189 (5th Cir. 1989). "Permissive intervention 'is wholly discretionary with the [district] court . . . .'" New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 470–71 (5th Cir. 1984) (quoting Wright & Miller, 7C Federal Practice and Procedure: Civil § 1913) (alteration in original).

   2. *Analysis*

The only factor for intervention in dispute is whether the Trustee has a direct, substantial, and legally protectable interest that is related to the property or transaction that forms the basis of the controversy in this case. As discussed above, the controversy in this case is whether EY's alleged professional negligence caused damage to the Bank. In its motion to intervene, the Trustee

claims that he, on behalf of the Holding Company's interest, owns the claims that the Receiver asserts here.

The Trustee may own claims for injury that the *Holding Company* suffered due to EY's alleged professional negligence and breach of contract.[2] But the Trustee has not explained a legal basis for its ownership of claims for injury suffered by the *Bank*. While the actions of EY may be the same in each case, the ultimate question of legal causation is distinct.

To the extent the Receiver lacks standing to assert a claim against EY for injury to the Bank, that is a predicament for the Receiver to deal with. It has nothing to do with the Trustee's claim against EY.

To the extent the Trustee's theory is that he must be allowed to intervene because the same recovery source (insurance proceeds) available to him are those available to the Receiver for its claims, the Trustee has not made the argument in support of intervention as of right here. In any event, such an interest is purely economic and amounts to no more than a preference in the outcome (i.e., a desire that the Receiver recover nothing so more funds are available to pay the Trustee). The theory is even more attenuated than those cases concerning the scope or existence of insurance coverage over a tort claim where the tort claimants were not allowed to intervene as of right. See Liberty Mut., 419 F.3d at 221; In re HealthSouth Corp., 219 F.R.D. at 693. Here, the insurance policy is not even at issue. The Court finds that any economic interest the Trustee may have in the funds that EY will use to pay out claims against it related to the alleged fraud in auditing the Bank is insufficiently direct to justify intervention of right.

---

[2] Judge Africk has ruled as much in the action filed by the Trustee against EY and certain auditors. The Trustee will be able to vindicate its rights against EY in that action, which has now been sent to arbitration.

Because the Trustee lacks a direct, substantial, and legally protectable interest that is related to the property or transaction that forms the basis of the controversy in this case, he is not entitled to intervene as of right.

Moreover, the Court finds permissive intervention is not appropriate here. First, the Trustee has no right to the Receiver's claim arising out of injury to the Bank. There are no common questions of law or fact. Even if the Trustee sought to intervene to assert his own claims against EY (claims that would overlap factually with the Receiver's claims here), the posture of the cases differ. The Trustee's case against EY has been sent to arbitration. The Receiver's case remains in federal court (though subject to EY's Motion to Compel Arbitration). Allowing the Trustee's intervention at this stage would not serve judicial economy. Importantly, the Trustee can protect his interest by continued pursuit of his separate claim against EY and the auditors.

## Conclusion

Because the claims asserted by the Receiver in this case are separate and distinct from the claims that the Trustee has against EY, the Court finds that neither intervention of right nor permissive intervention are warranted here. Accordingly, the Trustee's Motion to Intervene (Rec. Doc. 111) is DENIED.

New Orleans, Louisiana, this 11th day of January, 2024.

_____
Janis van Meerveld
United States Magistrate Judge